UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH J. BRADLEY,

    Plaintiff,

    v.

MICHAEL DEWINE, et al.,

    Defendants.

Civil Action No. 14-110 (JDB)

## MEMORANDUM OPINION

Plaintiff Ralph J. Bradley, proceeding pro se, brings this action against Ohio Attorney General Michael DeWine; the Honorable Kristin G. Farmer and the Honorable Charles E. Brown, current and retired judges of the Court of Common Pleas of Stark County, Ohio; Timothy A. Swanson and George T. Maier, current and former sheriffs of Stark County; and John D. Ferrero, a Stark County prosecutor. Although the details of Bradley's claims are somewhat unclear, he seeks relief in connection with an allegedly fraudulent foreclosure decree issued by the Stark County Court of Common Pleas. Pl.'s Compl. [ECF No. 1] ("Compl.") at 2.

DeWine moved to dismiss Bradley's claims against him under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a claim. Mot. to Dismiss of Def. Ohio Attorney Gen. Michael DeWine [ECF No. 6] ("DeWine's Mot.") at 2. The remaining defendants (the "county defendants") collectively moved to dismiss the claims against them under Rules 12(b)(1), 12(b)(2), and 12(b)(6), challenging this Court's subject-matter jurisdiction over the action, its personal jurisdiction over them, and the sufficiency of Bradley's complaint. Def. the Hon. Judge Charles E. Brown, the Hon. Judge Kristin G. Farmer, George T. Maier, Timothy A. Swanson, and John D. Ferrero's Mot. to Dismiss [ECF

No. 5] ("Defs.' Mot.") at 1-2. For the reasons that follow, the Court will grant both motions to dismiss Bradley's complaint under Rules 12(b)(1) and 12(b)(2).

## BACKGROUND

At some point before 2014, Ralph J. Bradley, a self-described "sovereign inhabitant in . . . the County of Washington, DC" was subject to a foreclosure proceeding in the Court of Common Pleas of Stark County, Ohio. See Compl. at 1. In that proceeding, Bradley alleges, the defendants in this action "KNOWINGLY and INTENTIONALLY engaged in a Conspiracy to commit . . . a PONZI SCHEME, INSIDER TRADING, INSURANCE FRAUD, REAL ESTATE and MORTGAGE FRAUD, WIRE FRAUD . . . [etc.]" Id. at 3. As a result, Bradley claims, a foreclosure decree was "fraudulently" issued with respect to his property. Id. at 2.

Bradley appears to allege that DeWine, in his capacity as Ohio Attorney General, was the architect of this conspiracy. See id. at 10-11. He demands that DeWine be made to "answer to the relationship between the State of Ohio and each banking and lending institution" involved. Id. at 10. He further demands that Judge Brown, who issued the allegedly fraudulent foreclosure decree, and Judge Farmer, who affirmed the decree on appeal, "be held in CONTEMPT and PERJURY [for] aiding and assisting JPMorgan in conducting a Ponzi Scheme." Id. at 12. Because it is allegedly "the policy of the Stark County Sheriff's Department that 99% of all public[ly] auction[ed] properties [be] retained by the banking or lending institution [that] . . . 'finance[d]' the mortgage," Bradley also accuses Sheriffs Swanson and Maier of participating in the scheme. Id. at 12. Finally, Bradley alleges that Ferrero, a county prosecutor, fraudulently "approved" what appears to be the judgment lien entered on Bradley's property following the foreclosure. Id. at 14.

Bradley's requested remedies are many, and the legal theories underlying them are difficult to discern.[1] He requests "a full scale investigation and independent State Audit" of the financial crimes alleged in his complaint. Compl. at 1. He contends that "[a]ny county or state positions of employment [held by defendants], to include retirement benefits[,] must immediately be SUSPENDED." Id. at 4. He seeks a writ of quo warranto to "inquire into the authority by which [defendants hold] public office." Black's Law Dictionary 312-13 (9th ed. 2009); see Compl. at 4 (citing D.C. Code § 16-3501). He demands money damages in the amount of $104,799,059.54 against each defendant. Compl. at 8. He seems to request injunctive relief voiding the sheriff's deed and judgment lien on his property. Id. at 13-14. And he seeks an injunction against "acts of domestic Violence that would forcibly remove 'BRADLEY' from the premises in question," by which he presumably means eviction. Id. at 19.

DeWine moved to dismiss Bradley's claims against him for lack of subject-matter jurisdiction and for failure to state a claim. DeWine's Mot. at 2. DeWine raised three independent grounds for his subject-matter jurisdiction defense: sovereign immunity, the Rooker-Feldman doctrine, and insubstantiality.[2] Id. The county defendants collectively moved to dismiss for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine, lack of personal jurisdiction, and failure to state a claim. They also raised qualified and judicial immunities as affirmative defenses. Because the Court holds that it does not have jurisdiction

---

[1] A pro se pleading "is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This principle is not without limits, however. For example, "[p]ro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." Gomez v. Aragon, 705 F. Supp. 2d 21, 23 (D.D.C. 2010) (citations omitted).

[2] The insubstantiality doctrine deprives federal courts of jurisdiction under 28 U.S.C. § 1331 where a plaintiff's only claims presenting federal questions are "wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946). It is unclear from Bradley's complaint whether he intends to invoke this Court's jurisdiction under section 1331, however, because his jurisdictional theory is not entirely coherent. See, e.g., Compl. at 2 ("Plaintiff will not answer to Diversity jurisdiction, as this Court lacks subject matter and territorial jurisdiction to supersede Federal Question jurisdiction."). Because the Court will dismiss Bradley's claims against DeWine for lack of subject-matter jurisdiction on other grounds, it is unnecessary to consider DeWine's insubstantiality defense.

3

over either the subject matter of this action[3] or over those defendants who raised a personal-jurisdiction defense, the Court will grant DeWine's motion to dismiss under Rule 12(b)(1) and the remaining defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(2).[4]

## LEGAL STANDARDS

Federal courts have leeway to "choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil, 526 U.S. 574, 585 (1999)). "[C]ertain nonmerits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem, 549 U.S. at 431) (alterations in original). Where, as here, a party challenges both subject-matter and personal jurisdiction, the Court must address both before proceeding to the merits. Sinochem, 549 U.S. at 430-31 (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83 (1998)). In most cases, "expedition and sensitivity to state courts' coequal stature" will lead courts to analyze subject-matter jurisdiction first. Ruhrgas, 526 U.S. at 587-88.

    a.    **Subject-Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). It is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

---

[3] Under the heading "Jurisdiction and Venue," Bradley argues that this Court has jurisdiction over his claims pursuant to D.C. Code §§ 11-501(1) and (4). See Compl. at 6. These provisions, which relate to the reorganization of the D.C. court system in 1970, are no longer in force, and so provide no basis for jurisdiction. See D.C. Code § 11-501.

[4] Because this Court lacks subject-matter jurisdiction, however, it will decide neither whether Bradley states a claim for relief nor whether the county defendants enjoy qualified or judicial immunity.

4

contrary rests upon the party asserting jurisdiction," which, in this instance, is Bradley. Id. (citations omitted). And "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim," a court "must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." Bailey v. WMATA, 696 F. Supp. 2d 68, 71 (D.D.C. 2010). Nevertheless, the court must still "accept all of the factual allegations in the complaint as true." Jerome Stevens Pharms. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); accord Fed. R. Civ. P. 12(h)(3).

      b.     **Personal Jurisdiction**

A plaintiff also bears the burden of establishing the Court's personal jurisdiction over a defendant who moves to dismiss the claims against him under Rule 12(b)(2). See Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005). Where, as here, there has been no jurisdictional discovery, a plaintiff need only make a prima facie showing of the pertinent jurisdictional facts to meet that burden. See id.; see also Brunson v. Kalil & Co., Inc., 404 F. Supp. 2d 221, 226 (D.D.C. 2005). "Moreover, to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." Mwani, 417 F.3d at 7. Nevertheless, a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations, see Elemary v. Phillipp Holzmann AG, 533 F. Supp. 2d 116, 121 (D.D.C. 2008).

**DISCUSSION**

Defendants have moved to dismiss all of Bradley's claims against them. DeWine has filed a motion to dismiss Bradley's claims against him, while the county defendants together have filed a separate motion to dismiss the claims against them. DeWine argues that because he is an official of the state of Ohio, the Eleventh Amendment deprives this Court of subject-matter jurisdiction over claims against him for money damages. DeWine's Mot. at 2-3. In addition, the county defendants argue that because they are residents of Ohio who lack sufficient contacts with the District of Columbia, this Court does not have personal jurisdiction over them. Defs.' Mot. at 3. All defendants argue that because Bradley seeks review of a state-court judgment, this Court lacks subject-matter jurisdiction over the entire action under the Rooker-Feldman doctrine. DeWine's Mot. at 3; Defs.' Mot. at 4-5. The Court will address each argument in turn.

**I.      Sovereign Immunity Under The Eleventh Amendment**

DeWine first argues that he is immune from Bradley's claims for money damages under the Eleventh Amendment. The Eleventh Amendment deprives federal courts of subject-matter jurisdiction over an action for money damages brought against a state. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). A suit against a state official in his official capacity is treated as a suit against the state. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). If a complaint does not specify whether an official is being sued in his individual or official capacity, "'[t]he course of proceedings' . . . typically will indicate the nature of the liability sought to be imposed." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985)). For example, a court might infer that a plaintiff sues a government official in the official's individual capacity if the plaintiff seeks remedies that are unavailable against a government entity, or if the plaintiff names the government entity separately as a

defendant. See Atchinson v. District of Columbia, 73 F.3d 418, 425 (D.C. Cir. 1996). Where no such clues are present, some courts "presume[] that a state official is sued in her official capacity." Hill v. Michigan, 62 F. App'x 114, 115 (6th Cir. 2003); see also Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989) (treating a suit as an official-capacity suit where the plaintiff "failed to indicate . . . that she sought damages directly from [the defendant official]").

Bradley seeks $104,799,059.54 in money damages against DeWine, but his complaint does not specify whether he seeks this award from the state of Ohio or from DeWine personally. Bradley does argue that Ohio has "waived its sovereign immunity under the Eleventh Amendment," Compl. at 2, which suggests that he intends to recover the damages from Ohio. He refers to DeWine as the "Ohio Attorney General" several times in his complaint, which also suggests an official-capacity suit. See, e.g., Compl. at 9. And Bradley does not name the state of Ohio separately as a defendant or request remedies that are unavailable against Ohio—in fact, he asks the Court to issue injunctive orders that could likely only be carried out by the state. See, e.g., Compl. at 1 (requesting an "independent State Audit"); id. at 4 (requesting that defendants' state and county employment be terminated). For these reasons, and because the complaint contains no indications to the contrary, the Court will treat Bradley's money-damages claim as one against DeWine in his official capacity. It is therefore a claim against Ohio, and so the Eleventh Amendment applies.

Although a state can waive its sovereign immunity under the Eleventh Amendment, waiver is the exception rather than the rule. See Edelman, 415 U.S. at 671-74 ("The mere fact that a State participates in a [federal] program . . . is not sufficient to establish consent on the part of the State to be sued in the federal courts."); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72 (1996) ("[T]he Eleventh Amendment prevents congressional authorization of suits by private

parties against unconsenting States.") (emphasis added). Here, Bradley provides no authority to support his contention that Ohio has waived its sovereign immunity for suits in federal court.[5] See Compl. at 2. Perhaps this is because none exists. See Turker v. Ohio Dept. of Rehab. and Corr., 157 F.3d 453, 457 (6th Cir. 1998) ("[A] federal court cannot entertain a lawsuit against state officials . . . unless the state has waived its immunity under the Eleventh Amendment . . . . Ohio has not waived that immunity."); Lee Testing & Eng'g v. Ohio Dept. of Transp., 855 F. Supp. 2d 722, 726 (S.D. Ohio 2012) ("Ohio has not waived its Eleventh Amendment immunity from suits for money damages in federal court."). In any event, Bradley bears the burden of showing that Ohio has waived its sovereign immunity, see Kokkonen, 511 U.S. at 377, and he has failed to carry that burden. Thus, because Bradley has failed to show that Ohio has waived its sovereign immunity with respect to his money-damages claim, the Eleventh Amendment deprives this Court of subject-matter jurisdiction over that claim. DeWine's Rule 12(b)(1) motion to dismiss the money-damages claim will therefore be granted.

## II. Personal Jurisdiction

The county defendants have also moved to dismiss Bradley's claims against them for lack of personal jurisdiction.[6] See Defs.' Mot. at 3-4. Under Federal Rule of Civil Procedure 4(k), a federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Thus, because none of Rule 4(k)'s other provisions apply here, see Fed. R. Civ. P.

---

[5] Ohio Revised Code § 2743.02 generally waives Ohio's sovereign immunity for suits in Ohio state court. See Ohio Rev. Code Ann. § 2743.02 (West).

[6] A defendant waives any objection to a court's exercise of personal jurisdiction over him if he fails to raise it in a Rule 12 motion. See Fed. R. Civ. P. 12(h)(1)(A). Thus, when DeWine moved to dismiss Bradley's claims against him under Rules 12(b)(1) and 12(b)(6) without raising a personal-jurisdiction defense, he waived any objection to this Court's exercise of personal jurisdiction over him.

8

4(k), this Court has personal jurisdiction over the county defendants only if a District of Columbia court could exercise jurisdiction over them.

Two requirements must be met for a District of Columbia court to exercise personal jurisdiction over a defendant. First, the defendant must qualify for either general or specific jurisdiction under the relevant District of Columbia statutes. See D.C. Code §§ 13-422 to -423. Second, the exercise of jurisdiction over the defendant must comply with the Due Process Clause of the Fourteenth Amendment. See Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945).

General jurisdiction allows a court to adjudicate any claims brought against a defendant. See Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 929 (D.C. Cir. 1981). The D.C. Code grants a District of Columbia court general jurisdiction over a person who is "domiciled in, . . . or maintaining his . . . principal place of business in, the District of Columbia." § 13-422. But the county defendants are all residents of Ohio, Defs.' Mot at 3, and Bradley does not allege that they conduct any business in the District of Columbia. They are thus not subject to general jurisdiction under section 13-422.

Specific jurisdiction arises where a defendant—resident or not—engages in certain kinds of conduct enumerated in the District's long-arm statute. See, e.g., § 13-423(a) (listing various types of conduct). A court with specific jurisdiction may only adjudicate those claims that arise out of the conduct that triggered its jurisdiction. § 13-423(b). Bradley does not specifically allege that the county defendants engaged in any of the conduct listed in section 13-423(a). He comes closest to alleging misconduct within section 13-423(a)(4), which confers jurisdiction over a defendant who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia," but only "if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or

9

services rendered, in the District of Columbia." § 13-423(a)(4). Bradley alleges that a tortious act outside the District of Columbia—a fraudulent foreclosure proceeding in Ohio—caused him injury in the District, where he lives. See Compl. at 1. He does not allege, however, that the county defendants have any business ties to the District of Columbia or that they "engage in any other persistent course of conduct" here. § 13-423(a)(4). Thus, because Bradley fails to allege conduct satisfying section 13-423(a)(4) or any other provision of section 13-423(a), this Court lacks specific jurisdiction over the county defendants.

The Due Process Clause of the Fourteenth Amendment also constrains this Court in its exercise of personal jurisdiction. Steinberg, 672 F.2d at 930. Even if Bradley had sufficiently alleged conduct satisfying D.C.'s long-arm statute, he would still have to show sufficient "minimum contacts" between "the defendant[s], the forum, and the litigation" to satisfy the Due Process Clause. Schaffer v. Heitner, 433 U.S. 186, 203-4 (1977). Typically, such "minimum contacts" arise only where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253-54 (1958). "[U]nilateral activity" on the part of a plaintiff is insufficient. Id. This ensures that "potential defendants [can] structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).

Because Bradley does not allege that the county defendants engaged in any conduct whatsoever in the District of Columbia, his allegations do not suggest that these defendants have purposefully availed themselves of the protections of D.C. law. See Hanson, 357 U.S. at 253-54. Indeed, it would undoubtedly come as a surprise to them if participating in a foreclosure proceeding in Ohio exposed them to suit in a D.C. court. Bradley has thus failed to allege facts

10

that would allow this Court to exercise personal jurisdiction over the county defendants consistent with both District of Columbia law and the Due Process Clause of the Fourteenth Amendment. As a result, this Court lacks personal jurisdiction over these defendants, and the Court will grant their Rule 12(b)(2) motion to dismiss Bradley's claims against them.

### III. The Rooker-Feldman Doctrine

All defendants have moved to dismiss Bradley's entire complaint for lack of subject-matter jurisdiction based on the Rooker-Feldman doctrine. Under 28 U.S.C. § 1257, the U.S. Supreme Court has jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State." 28 U.S.C. § 1257. The Rooker-Feldman doctrine, a judge-made corollary of section 1257, makes this jurisdiction exclusive. Lance v. Dennis, 546 U.S. 459, 463 (2006) (quoting Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983)). Thus, Rooker-Feldman "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Id. at 460 (citations omitted). But Rooker-Feldman is "not simply [claim] preclusion by another name." Id. at 466. Because an "expansive Rooker-Feldman rule would tend to supplant Congress' mandate . . . that federal courts look principally to state law in deciding what effect to give state-court judgments," courts are careful to apply the rule "only in limited circumstances." Id.

Rooker-Feldman bars a federal court from exercising jurisdiction over a claim if three criteria are met. See id. at 462. First, "[t]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment." Id. Here, the prior state-court judgment at issue is the foreclosure decree issued against Bradley in Stark County Court: that is the judgment from which Bradley seeks relief. See, e.g., Defs.' Mot. at 5. Bradley himself asserts

11

that he was a party to that action, see Compl. at 1, and his assertion is not contested. Rooker-Feldman's first requirement is therefore satisfied.

Second, "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment." Lance, 546 U.S. at 462. Here, it is unclear whether Bradley actually raised his conspiracy claims during the foreclosure action. But a plaintiff's federal-court claims are "inextricably intertwined" with a prior state-court judgment unless their "core" is "independent" of that judgment. See Stanton v. Dist. of Columbia Court of Appeals, 127 F.3d 72, 76 (D.C. Cir. 1997); see also Kenmen Eng'g v. City of Union, 314 F.3d 468, 476 (10th Cir. 2002) ("[W]e [ask] whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress."). For example, a claim is not "inextricably intertwined" with a prior state-court judgment if it is a facial challenge to the constitutionality of the rule applied by the state court in the prior proceeding. See Feldman, 460 U.S. at 486-87 (holding that a lower federal court could hear a challenge to the constitutionality of a D.C. bar admission rule, but not a claim that the D.C. Court of Appeals had abused its discretion in applying the rule); Stanton, 127 F.3d at 76 ("Applying Rooker-Feldman requires us to draw a line between permissible general challenges to rules and impermissible attempts to review judgments.").

Liberally construed, Bradley's complaint alleges that defendants conspired to abuse the judicial process in order to unlawfully deprive him of his property. See Compl. at 2. Far from being "independent" of the Stark Count judgment, the "core" of Bradley's claims is that the state-court judgment was fraudulent and therefore invalid.[7] Bradley challenges no statute or court

---

[7] In another context, Rooker-Feldman might not bar a party from challenging a state-court judgment as fraudulent in federal court. Some courts have held that Rooker-Feldman does not apply to "a collateral attack on a state court judgment which is alleged to have been produced through fraud, deception, accident, or mistake." In re Sun Valley Foods Co., 801 F.2d 186 (6th Cir. 1986) (internal quotation marks omitted); but see Hunter v. U.S. Bank

12

rule as unconstitutional. In other words, he seeks review of the state-court judgment. His claims are therefore "inextricably intertwined" with the state-court judgment, and Rooker-Feldman's second requirement is satisfied.

Rooker-Feldman's third and final requirement is that "the federal claim must not be parallel to the state-court claim." Lance, 546 U.S. at 462. A federal-court claim is parallel to a state-court claim if it is filed after the state-court claim, but before the state court enters judgment. See Exxon Mobil v. Saudi Basic Indus., 544 U.S. 280, 289-91 (2005) (holding that Rooker-Feldman did not prevent a state-court defendant from suing a state-court plaintiff in federal court while the state-court action was still pending). Again, this requirement reflects the delicate balance between Rooker-Feldman and claim preclusion: "[d]isposition of the federal action, once the state-court adjudication is complete, [is] governed by preclusion law." Id. at 293. Thus, Rooker-Feldman deprives a federal court of jurisdiction over a claim only if it was brought in federal court after judgment was entered in the state-court action with which the claim is "inextricably intertwined." Id.

Here, Bradley "seeks to challenge the alleged free and clear title awarded to [Bradley's bank] in Civil foreclosure Case No. 2012-CV-01795."[8] Compl. at 1. Although the date of the foreclosure decree issued in that action is not clear from the pleadings,[9] the decree logically must

---

Nat. Ass'n, 698 F. Supp. 2d 94, 100 (D.D.C. 2010) (discussing but not adopting this exception); Velazquez v. South Fla. Fed. Credit Union, 546 Fed. App'x 854, 859 (11th Cir. 2013) (same). A collateral attack allows a party to avoid the enforcement of a prior judgment in a subsequent proceeding. See generally Restatement (Second) of Judgments § 70 (1982) ("[A] judgment in a contested action may be avoided if the judgment (a) [r]esulted from corruption of . . . the court . . . or (b) [w]as based on a claim that the party obtaining the judgment knew to be fraudulent."). Here, however, defendants do not seek to enforce the foreclosure judgment against Bradley, nor do they assert it as res judicata to bar his claims. Thus, the Court need not consider endorsing the "collateral attack exception" to Rooker-Feldman, because it would not apply in this case.

[8] Case number 2012-CV-01795 is not to be confused with case number 2014-CV-00162, another action that Bradley has brought in Stark County Court, which apparently duplicates his claims in this action. See Defs.' Mot. at 2 n.1. Although case number 2014-CV-00162 is apparently still pending, defendants here do not suggest that it triggers Rooker-Feldman.

[9] Bradley also refers to an "Attached January 23, 2014 Judgment Entry," Compl. at 2, but the attached order is from a separate action in Stark County Court (No. 2014-CV-00162).

13

have been issued before the complaint was filed, because Bradley refers to it extensively in his complaint. And a foreclosure decree is "a final judgment of [an Ohio] state court." In re Hoff, 187 B.R. 190, 193 (Bankr. S.D. Ohio 1995). Thus, Bradley filed his complaint in this Court after a final judgment was issued in the state-court proceeding that he now seeks to challenge. His federal-court claims are thus not parallel to the state-court proceeding, and Rooker-Feldman's third and final requirement is met. As a result, this Court lacks subject-matter jurisdiction over all of Bradley's claims against each defendant, and both Rule 12(b)(1) motions must be granted.

## CONCLUSION

For the foregoing reasons, DeWine's Rule 12(b)(1) motion to dismiss will be granted. The county defendants' Rule 12(b)(1) and 12(b)(2) motions to dismiss will also be granted. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: July 8, 2014